IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 18, 2016

## BRIAN GARRETT WALLACE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Robertson County**
**No. 74CC3-2012-CR-23   John H. Gasaway, III, Judge**
_____

**No. M2015-02163-CCA-R3-PC – Filed November 18, 2016**
_____

Petitioner, Brian Garrett Wallace, entered an open guilty plea to five counts of attempted especially aggravated exploitation of a minor and one count of attempted sexual battery. The trial court imposed an effective eighteen-year sentence to be served at 35 percent as a Range II offender which included consecutive sentencing. On appeal, this Court upheld the sentence. *State v. Brian Garrett Wallace*, No. M2013-01172-CCA-R3-CD, 2014 WL 1883704 (Tenn. Crim. App. May 12, 2014). Petitioner filed a petition for post-conviction relief alleging that his trial counsel provided ineffective assistance and that Petitioner's guilty plea was unknowingly and involuntarily entered. Following an evidentiary hearing, the post-conviction court denied relief. Following a careful review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Brian Garrett Wallace.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Jason White, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Background*

The following facts were recited by the State at the guilty plea submission hearing:

[T]he facts would show that at the time—December 11 of last year—of 2011, [Petitioner] was living with [the victim's mother] and her children and [the victim's mother] had a little girl, [the victim], at the age of I believe eight or nine at the time. [The victim's mother], it was late at night, and there had been some previously some—they had shared phones and [Petitioner] had taken a SIM card or SD card out of a phone—a card that contains pictures and prevented [the victim's mother] from looking at it. Another occasion, [the victim's mother] picked it up and said something about it and [Petitioner] did not want her to—acted like he didn't want her to see what was on the pictures so that night, December 11, [the victim's mother] was up late and changing out his wallet and finds this SD card in his pants pocket. More out of curiosity, puts it in the phone and begins looking at what is on the SD card and discovers that there are pictures taken of [the victim] of a sexual or lascivious nature.

Count Two, Your Honor, we can date—November 14, 2011 ... and it is of basically [the victim's] buttocks—this point her pajamas are pulled down and it shows her underwear and we do have that distinct pair of underwear that we would—at a jury trial, show that it is her underwear. Count five, Your Honor, is another picture taken that same day too, ... and this time of naked buttocks of [the victim], and we would be able to say it is [the victim] because of the distinct underwear. Also, the Mom would be able to identify the bedspread and blanket that is in the picture. As well, [Petitioner] admitted in a statement that it was of the victim and he did take these pictures.

As to—and that specifically, the admission is specifically to—two, five and eight. Count eight, Your Honor, is another picture taken November 14 2011, ... it shows a more distinct picture of compete pull down of the panties and another picture of the naked buttocks. Once again, we could determine the victim based on her clothing, bedspread and also based on an admission.

Also, Your Honor, as related—and the reason—in the order it is, Count nineteen, refers to that same event of November 14, in his confession, [Petitioner] admits while he was pulling these panties down and taking these different shots of the victim that he rubbed her buttocks. This was—the victim all accounts was asleep, does not remember anything but his confession would be corroborated by the pictures because they are consistent with him—with the panties in one position and pulling

2

them down and pulling them down again, which is consistent with him rubbing the buttocks as he described in his confession. So there would be enough evidence, Your Honor, to corroborate on what [Petitioner] is admitting to or admitted to as far as the aggravated sexual—attempted aggravated sexual battery as to the confession.

As to count nine, Your Honor, it's a picture of a different date. It's a— the phone had been set in a particular location and [Petitioner] is seen getting the victim dressed and he's got the phone positioned in a manner in which when the victim—he pulls the victim's panties off, it showed— it creates a picture clearly of her vagina, of her naked vagina. [Petitioner], once again—this can be ID'd by the mother who can ID the child and ID the blankets in the picture and ID the bedroom, can ID everything [of that] nature. [Petitioner] admits in his confession to the picture. The one thing he does say about this picture though is he says he didn't realize the phone was on. At a trial, the State would challenge that, Your Honor, based on the location of the phone and the distinctness of the picture that was created. The phone had to be in a certain position to get that picture. But he does acknowledge, that he was aware of it and didn't know.

As to count sixteen, Your Honor, it's a different picture—you can't tell it's a different date from the two through nineteen range and the count nine incident, but it is a picture of the victim's buttocks with her pants pulled down, it's of jeans and a t-shirt and we can ID that and it was on the same phone, LG phone as well that contained—the same card that contained all these other pictures.

The expert, Your Honor, at T.B.I., at the trial would be able to say that something happened—nine and sixteen he cannot say where they were taken from but he can say that two, five and eight were taken off the phone that was recovered at the scene and that the defendant admitted was his phone.

*Post-Conviction Hearing*

Petitioner testified that he dropped out of high school in the ninth grade but obtained his GED. He was incarcerated at the time of his guilty plea and had been in custody since September of 2012. Petitioner testified that he made bond after his arrest for the current offenses, and he was on bond from March to September of 2012. He said that he saw trial counsel three or four times during his release, and he saw her once or

twice after he was taken back into custody. Petitioner testified that each meeting lasted a few minutes.

Petitioner testified that trial counsel first presented a plea agreement to him while he was released on bond. He thought that he was shown a proposed plea agreement two times. Petitioner understood the proposed agreement to be "just at 100 percent sentencing for different amounts of years." He did not agree to the offer. Petitioner testified that trial counsel presented a different plea agreement to him on the morning of his trial. He understood the agreement to be an "open plea at 35 percent, which was out of range, but taking the plea for a minimum and a maximum amount of years, but I was eligible for minimum sentencing."

Petitioner understood the agreement to mean that he would "have to serve five more percent of [his] time before [he] was eligible for parole." When asked what he did not understand about the plea agreement, Petitioner testified:

> [Trial counsel] told me that if I took the plea at 35 percent that I was going - - I was going to basically get the minimum sentencing, which was - - I'd get between eight to ten years at 35 percent; that was the minimum basis I would get. I was never told that there was any possibility being at 35 percent that I could get consecutive sentencing. I was explained any mitigating or enhancement factors that could be offered. That was about it.

Petitioner said that he and trial counsel did not discuss the release eligibility date and that parole was not guaranteed. They also did not discuss whether he would receive consecutive or concurrent sentencing. Petitioner testified that he was ultimately sentenced to eighteen years with a 35 percent release eligibility date. He explained that he received partial consecutive sentences. Petitioner acknowledged that some of his charges were dismissed as a result of the plea agreement, and the six charges to which he pled guilty were reduced. Petitioner testified that he and trial counsel did not have any "deep" discussion about community service for life, supervision for life, or registering as a sex offender.

Petitioner acknowledges that the trial court discussed the possibility of an out of range sentence at the guilty plea submission hearing. He thought that the trial court's discussion during the hearing concerning release eligibility date "meant parole." Petitioner thought that he and trial counsel met one time between the guilty plea submission and the sentencing hearing. He said that they did not discuss enhancement or mitigating factors. Petitioner claimed that the trial court told him that he would serve 35 percent of his 18-year sentence and that he would then be released on parole. When

asked if he would have entered the plea if he had known that the 35 percent release eligibility date did not guarantee parole, Petitioner replied:

> I don't know. It would have probably dissuaded my decision whether - - of which plea deal to take. As far as going to trial what, I hate to say it this way but, scared me the most was that I was never shown a motion of discovery prior to any plea deals.

Petitioner testified that if he had fully understood the initial plea offer of eight years at 100 percent he would have chosen that offer.

On cross-examination, Petitioner testified that trial counsel reviewed discovery with him but did not show it to him. She also explained pictures to him that were discovered on the memory card that he had admitted belonged to him. Petitioner agreed that trial counsel explained the charges to him and gave her opinion about what would happen at trial based on witness' testimony, the pictures that were discovered, and Petitioner's confession. Trial counsel felt that it was in Petitioner's best interest to accept a plea agreement.

Petitioner testified that he knew that he was pleading out of range, and the trial court advised him that he did not have to accept the plea. The trial court advised him that he was pleading guilty as a Range II multiple offender with a sentencing range of eight to thirty-two years. Petitioner understood that his sentence would be served in the Department of Correction. He claimed that no one explained to him about concurrent and consecutive sentencing and that trial counsel never said that he would be given consecutive sentences. However, Petitioner admitted that the trial court explained consecutive and concurrent sentencing to him at the guilty plea submission hearing. The trial court further advised him that whether his sentences would be served consecutively or concurrently would be determined during a sentencing hearing at a later date. Petitioner told the trial court that he understood what the court had explained. Petitioner acknowledged that at the end of the guilty plea submission hearing the trial court asked if Petitioner had any questions. The only question Petitioner asked was about some of his property.

Trial counsel testified that Petitioner missed his initial appointment with her and showed up the following day. She also met with him four additional times before the guilty plea was entered, and she met with him two additional times after that. Trial counsel noted that "[s]ome of the meetings were very detailed where we discussed the charges in detail, some of them were a little more brief." She remembered Petitioner's case "pretty well" because he pled out of range, and she spent "so much time with him."

5

Trial counsel also stated that Petitioner faced "a lot more time than a normal client, so [they] spent a good deal of time together."

Trial counsel testified that Petitioner was very forthcoming with her and during his interview with police concerning his guilt. She said:

> He gave a very detailed statement to the detectives. And when I first met with him he was very candid and forthcoming with me about what had happened. So kind of from the beginning of the representation, based on the facts of the case, he and I were - - we talked a lot about what was going to happen to him. So the final plea offer may not have been ironed out until the day before but we were negotiating for several weeks.
>
> And he is correct, we did have an eight and 100 percent with the possibility of getting 15 percent off; we had that offer. I actually strongly recommended that he take that. He was more concerned with the percentage, which is how we ended up pleading out of range. So he had an opportunity to get a lower percentage.

Trial counsel testified that she discussed consecutive sentencing with Petitioner, and he knew that it was a possibility. She said, "[W]hich is why I was encouraging him to take the eight-year offer."

Trial counsel agreed that she did not give the discovery packet to Petitioner. She testified: "We generally do not give discovery on sex offenses when the client is in jail." However, she discussed the charges with him in detail. Although she could not recall for certain, trial counsel thought that Petitioner made bond and was released from jail and that he picked up the discovery after his release.

On cross-examination, trial counsel testified that the discovery in Petitioner's case contained his confession. There were also pictures of the victim that were discovered by the victim's mother. Trial counsel agreed that the pictures were provocative and lascivious in nature and were considered child pornography which Petitioner could not be allowed to carry around. She testified that the pictures were shown to Petitioner several times, and she reviewed Petitioner's statement with him. Trial counsel testified that she and Petitioner "talked about his statement a lot." She did not see any grounds to file a motion to suppress the statement.

Trial counsel testified that the initial plea offer was eight years at 100 percent, and she attempted to negotiate a lower percentage; however, the State would not agree. She advised Petitioner to accept the eight-year offer, and she told him "the likelihood of

6

making parole on a sex case was slim to none." Trial counsel testified that Petitioner was "hung up on the 100 percent versus the 35 percent."

Trial counsel testified that she explained to Petitioner that he was pleading guilty to an out of range sentence, and he seemed to understand. She felt that Petitioner "absolutely" had a clear understanding of what he was doing when he entered the guilty plea. Trial counsel testified that she "definitely" told Petitioner that there was a possibility of consecutive sentencing. She said that Petitioner's only concern was getting back some pictures that were in the possession of "Chief Yates."

*Analysis*

Petitioner contends that his guilty plea was unknowingly and involuntarily entered, and his trial counsel provided ineffective assistance because Petitioner did not fully understand the plea.

In a post-conviction proceeding, the burden is on the Petitioner to prove his alleged factual grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Id.* Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id.* at 457.

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 205, 280 L. Ed. 2d 674 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when facts established by clear and convincing evidence prove that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." *Id.* at 369

7

(citing *Strickland*, 466 U.S. at 688; *Baxter*, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*. at 370 (quoting *Strickland*, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner must show that, but for counsel's errors, he would not have entered his guilty plea and would have proceeded to trial. *Serrano v. State*, 133 S.W.3d 599, 605 (Tenn. 2004) (citing *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)).

Additionally, we note that in determining the voluntariness of a guilty plea, a trial court must advise the defendant of the consequences of a guilty plea and determine whether the defendant understands those consequences to ensure the plea is a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *see also Boykin v. Alabama*, 395 U.S. 238, 244, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). The trial court must address the defendant personally in open court, inform the defendant of the consequences of the guilty plea, and determine whether the defendant understands those consequences. *See State v. Mackey*, 553 S.W.2d 337, 341 (Tenn. 1977), *superseded on other grounds by rule as stated in State v. Wilson*, 31 S.W.3d 189, 193 (Tenn. 2000); Tenn. R. Crim. P. 11(c). In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the [petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

Following an evidentiary hearing, in a ruling from the bench, the post-conviction court concluded that Petitioner had failed to establish that his guilty plea was not entered knowingly and voluntarily. The post-conviction court found:

> [Petitioner] is before the Court today having filed an application for post[-]conviction relief. His application is predicated on his contention that his guilty plea was either involuntarily entered or that it was unlawfully [i]nduced and that - - and that is based on his contention that

8

he did not understand fully the nature and/or the consequences of the plea agreement.

The Court has considered the testimony of [Petitioner], the testimony of [trial counsel] his lawyer, his trial lawyer, and the Court has also considered the guilty plea colloquy. And after considering everything the Court determined that he has failed to meet his burden to convince the Court by a preponderance of the evidence that - - that his guilty plea was not entered voluntarily and that he did not know - - understand the consequences of it. The Court finds [trial counsel's] representation to be thorough, complete, timely and above reproach. His petition is denied.

The record fully supports the trial court's findings. Petitioner claims that he did not have "much time to consider his options," and he believed that he would be released after serving thirty-five percent of his eighteen-year-sentence. He further contends that he "never fully grasped what pleading 'out-of-range' meant." Petitioner also states: "If the true impact of the plea were known to [Petitioner], [he] would have rejected the plea even though he could face far greater time and the State would now probably not negotiate a settlement offer with [Petitioner]."

However, trial counsel testified that she encouraged Petitioner to accept the State's initial plea offer of eight years at 100 percent; however, Petitioner rejected the plea because he was "hung up on the 100 percent versus the 35 percent." Trial counsel testified that she explained to Petitioner that he was pleading guilty to an out of range sentence, and he seemed to understand. She also felt that Petitioner "absolutely" had an understanding of what he was doing when he entered the guilty plea. She "definitely" told Petitioner that there was a possibility of consecutive sentencing. Trial counsel testified that she also advised Petitioner that "the likelihood of making parole on a sex case was slim to none."

At the post-conviction hearing, Petitioner acknowledged that he understood the plea agreement to be an "open plea at 35 percent, which was out of range, but taking the plea for a minimum and a maximum amount of years, but I was eligible for minimum sentencing." Petitioner further acknowledged that the trial court discussed the possibility of an out of range sentence at the guilty plea submission hearing and told him that he did not have to accept the plea. The trial court advised him that he was pleading guilty as a Range II multiple offender with a sentencing range of eight to thirty-two years. Petitioner understood that his sentence would be served in the Department of Correction. The trial court explained consecutive and concurrent sentencing to Petitioner and that whether his sentences would be served concurrently or consecutively would be determined during a sentencing hearing at a later date. Petitioner told the trial court that he understood what

the court had explained. The trial court also gave Petitioner an opportunity to ask questions about the plea agreement.

When asked if he would have entered the plea if he had known that the 35 percent release eligibility date did not guarantee parole, Petitioner replied, "I don't know." He further stated that what "scared him the most" was that he was never shown discovery "prior to any plea deals." Petitioner's statement was disputed by trial counsel who testified that she advised Petitioner that he was not guaranteed parole and that she reviewed discovery with him, which included his statements to police and pictures of the victim. Petitioner admitted at the post-conviction hearing that trial counsel explained the charges to him and gave her opinion about what would happen at trial based on witness' testimony, the pictures that were discovered, and Petitioner's confession. He stated that trial counsel felt that it was in his best interest to accept a plea. The post-conviction court obviously accredited the testimony of trial counsel.

Petitioner has failed to establish that trial counsel provided ineffective assistance or that Petitioner's guilty plea was unknowingly or involuntarily entered.

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE